UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTHA KARL,

    Plaintiff,

    v.

CITY OF MOUNTLAKE TERRACE, *et al.*,

    Defendants.

Case No. C09-1806RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' motion for partial summary judgment regarding three of plaintiff's claims: (1) her Section 1983 claim based on an alleged violation of her First Amendment rights, (2) her state law claim of wrongful discharge in violation of public policy, and (3) her Section 1985(2) claim for conspiracy to retaliate. Plaintiff claims that the City of Mountlake Terrace, her former employer, discharged her after she gave allegedly damaging deposition testimony in another lawsuit. At plaintiff's request, the Court heard oral argument in this matter on January 7, 2011.

For the reasons set forth below, the Court grants in part and denies in part defendants' motion.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

**II. DISCUSSION**

**A.     Background Facts.**

Plaintiff began working for the City of Mountlake Terrace (the "City") in April 2003 as the Administrative Assistant to the Chief of Police. Her job duties were primarily clerical and included processing time cards, attending and taking minutes at meetings, organizing training, answering the phone for the Chief of Police, and photocopying.

In 2008, plaintiff was subpoenaed to give deposition testimony in a civil case filed by former City employee Sgt. Jonathan Wender. Wender filed a federal lawsuit in this Court in 2007 against the City, its Chief of Police, and others alleging that he had been discharged in violation of the First Amendment and without due process. Wender v. Snohomish County, C07-0197TSZ (the "Wender litigation"). Specifically, Wender claimed that the City retaliated against him and ultimately discharged him for his outspoken criticism of the "war on drugs." As part of that litigation, Karl was deposed in May and again in July 2008. Karl contends that her testimony was damaging to the City. The parties subsequently settled the Wender litigation.

In September 2008, plaintiff was involuntarily transferred to a part time "Records Specialist" position within the police department. She alleges that the transfer was in retaliation for her deposition testimony and discriminatory because she was told that the transfer would enable her to spend more time with her two young children. Plaintiff was discharged from her employment in January 2009.

Plaintiff filed suit in this Court in December 2009 alleging retaliation in violation of her First Amendment rights, termination in violation of public policy, unlawful retaliation against a witness in violation of 42 U.S.C. § 1985(2), and gender discrimination in violation of the Washington Law Against Discrimination, ("WLAD"),

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

RCW 49.60 and Title VII, 42 U.S.C. § 2000e *et seq*.  In addition to suing the City, she has named as defendants Charles "Pete" Caw, the Assistant Chief in the Mountlake Terrace Police Department, and Scott Hugill, the Administrative Services Director for the City.

**B.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  Id. at 1221.

**C.     First Amendment Retaliation.**

Plaintiff contends that defendants violated her First Amendment rights by retaliating against her for the content of her deposition testimony in the Wender litigation.  The First Amendment "protects an employee's right, in certain circumstances, to speak as

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

1 a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417
2 (2006). In *Ceballos*, the Supreme Court explained that whether an employee's speech is
3 entitled to constitutional protection depends on two inquiries: (1) whether the employee
4 spoke as a citizen on a matter of public concern, and if so, (2) whether the government
5 employer had an adequate justification for treating the employee differently from any
6 other member of the general public. Id. at 418. This motion concerns only the first
7 inquiry.

8      As an initial matter, plaintiff bears the burden of showing that the speech
9 addressed a matter of public concern. See, e.g., Eng v. Cooley, 552 F.3d 1062, 1070 (9th
10 Cir. 2009). "Speech involves a matter of public concern when it can fairly be considered
11 to relate to any matter of political, social, or other concern to the community." Id.
12 (internal citations and quotations omitted). In contrast, "speech that deals with individual
13 personnel disputes and grievances and that would be of no relevance to the public's
14 evaluation of the performance of government agencies is generally not of public
15 concern." Id. (internal citations and quotations omitted). Whether an employee's speech
16 deals with a matter of public concern "must be determined by the content, form, and
17 context of a given statement, as revealed by the record as a whole." Id. (internal citations
18 and quotations omitted). The issue of whether speech is a matter of public concern is a
19 question of law. See, e.g., Robinson v. York, 566 F.3d 817, 822 (9th Cir. 2009).

20      Defendants attempt to dismiss the content of plaintiff's deposition by stating that it
21 all related to a "personnel matter." While speech involving an employee's own personnel
22 matter may not be protected, speech about another's personnel matter may be protected.
23 Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004). In this case, plaintiff
24 testified about what she saw and heard related to the alleged violation of Wender's First

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Amendment rights. For example, she testified that Wender had been outspoken about his disagreement with the City's drug policy, he spoke to the press about his beliefs, and Chief Smith believed that it was "inappropriate" of him to have done so. Karl Dep. at pp. 34-35. Plaintiff also testified that Chief Smith and the City manager discussed writing Wender a check "to make him go away" if he won his arbitration. Id. at pp. 21-22. Plaintiff further testified that she heard Chief Smith instruct a Snohomish County Deputy Prosecuting Attorney not to "waffl[e] on maintaining his stance on the Brady letter."[1] Id. at pp. 31-32; id. at p. 100. Plaintiff also overheard a conversation between Chief Smith and the assistant chiefs to the effect that if the investigation concluded that Wender had lied and a Brady letter issued, then the department "could not keep a Bradied officer." Id. at p. 136. Plaintiff testified that she overheard someone in the department, possibly Pete Caw, say that because of what Wender said to the press, the department should impose discipline that was "strong and swift." Id. at p. 134. She also heard Pete Caw say, "We have the little shit" after learning of Wender's alleged mishandling of the call regarding the marijuana plant. Id. at p. 43. Karl's testimony could show that the City disapproved of Wender's speech to the press and that certain officers conspired to discharge him for that speech. "Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." Thomas, 379 F.3d at 809; see also

---

[1] The City conducted an internal investigation regarding the way Wender allegedly mishandled a call involving marijuana. Declaration of Joseph Shaeffer, (Dkt. #45), Ex. O (First Amended Complaint in the Wender litigation). Karl contends that after the investigation was completed, Chief Smith and Assistant Chief Caw met with a Snohomish County Deputy Prosecuting Attorney and urged him to issue a "Brady" letter concluding that Wender had been dishonest. Id. at ¶¶ 3.64-3.81, 4.2. Wender contended that "Brady" letters are conveyed to an officer's department and can damage an officer's reputation and lead to adverse employment actions.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

1  Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 927 (9th Cir. 2004) (holding that "a
2  public employee's testimony addresses a matter of public concern if it contributes in some
3  way to the resolution of a judicial or administrative proceeding in which discrimination or
4  some other significant government misconduct is at issue").  The actions complained
5  about need not actually be unlawful.  Thomas, 379 F.3d at 809.  In this case, plaintiff's
6  deposition testimony did not simply discuss a personnel matter.  Rather, she was relaying
7  what she had heard and her opinions about the alleged violation of another employee's
8  Constitutional rights.  In addition, Karl's testimony implicated potential government
9  misconduct because it related to the alleged retaliation against Wender and the alleged
10 conspiracy to deprive him of due process.  For those reasons, the content of her
11 deposition related to a matter of public concern.

12       In considering the form and context of plaintiff's communications, defendants
13 argue that prior to her deposition, plaintiff never raised her concerns publicly, she did not
14 intend to present issues for public debate, and her testimony was provided as part of a
15 private workplace grievance.  In support, defendants cite to *Brownfield v. City of Yakima*,
16 612 F.3d 1140, 1148 (9th Cir. 2010), in which the court explained that "internal power
17 struggles within the workplace" are not of public concern.  As set forth above, however,
18 Karl's testimony related to alleged violations of Constitutional rights and misconduct by
19 government officials.  Courts have held that litigation regarding "racial, religious, or other
20 such discrimination by public officials" exposes wrongful conduct and "is, by its very
21 nature, a matter of public concern."  Alpha Energy Savers, Inc., 381 F.3d at 926-27.
22 Although the Wender litigation involved an alleged violation of Constitutional rights
23 rather than discrimination, there is no legal or policy reason to afford the former type of
24 speech less protection.  Moreover, unlike the plaintiff in *Brownfield*, Karl did not simply

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

complain internally; she testified during a deposition as part of a federal civil rights lawsuit.[2]  See, e.g., id. at 925 (explaining that "proceedings before a judicial or administrative body constitute a matter of public concern if they bring to light potential or action discrimination, corruption, or other wrongful conduct by government agencies or officials."). Although Karl's testimony did not occur in open court, it occurred in the context of federal litigation.[3]  Finally, the fact that the speaker did not intend to speak "publicly" is not dispositive. The content of the speech, rather than the speaker's motives, is the most important factor in determining whether the speech is protected. See, e.g., id. (explaining that the speaker's motives "should not be used as a litmus test for public concern;" content is the greatest single factor). For all of those reasons, Karl has shown that her speech involved a matter of public concern.

Having resolved the public concern inquiry, the Court must determine whether Karl was speaking as a citizen or a public employee, which is a mixed question of law and fact. See, e.g., Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121 (9th Cir. 2008). In this case, there is no dispute about the nature of plaintiff's job duties.

The Supreme Court's recent *Ceballos* decision provides substantial guidance on the issue of whether an employee was speaking as a citizen or a public employee. As set

---

[2] The fact that plaintiff did not air her concerns publicly is not dispositive. Thomas, 379 F.3d at 810.

[3] See, e.g., Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007) (finding that a police officer's speech during a civil suit deposition was protected) (cited with approval in Huppert v. City of Pittsburgh, 574 F.3d 696, 707-08 (9th Cir. 2009)). In contrast, defendants rely on *Morris v. Crow*, 142 F.3d 1379 (11th Cir. 1998), in which the court held that a police officer's testimony in a civil suit deposition was not protected. In *Morris*, however, the officer, in his deposition, merely "reiterated the conclusions regarding his observations of the accident" that he had made in his earlier report. Morris, 142 F.3d at 1382. The report was undisputedly made as part of his job duties.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

forth in that decision, the controlling factor is whether the employee's expressions were made pursuant to his or her official job duties. Ceballos, 547 U.S. at 421. The Court focused on that factor because it noted that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Id. at 421-22. The Court stressed that district courts applying its analysis should not simply rely on formal job descriptions. Rather, the inquiry is a practical one into the employee's actual job duties. Id. at 424-25. In this case, Karl's official job duties did not include testifying in depositions. That fact distinguishes this case from cases on which defendants rely, which involved police officers who testified pursuant to their official job duties. See, e.g., Huppert, 574 F.3d at 707-08. Defendants stress that Karl was paid for her time. Although that fact is "indicative of the nature of the speech," it is not dispositive. Id. at 704. Defendants also argue that plaintiff gained her knowledge through her employment, so the speech would not exist absent her employment. However, it is usually the case that public employees gain their knowledge through their employment. In light of that reality, courts have focused on whether the employee spoke pursuant to his or her job duties, not whether the knowledge was gained as a result of the employment. See, e.g., Ceballos, 547 U.S. at 421 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 572 (1968) (explaining that public employees should be able to speak freely without fear of retaliation about matters of public concern because, by virtue of their job duties, they are likely to be the most knowledgeable)). In this case, Karl's speech did not owe its existence to her public employment. She spoke pursuant to a subpoena, not pursuant to her job duties. As a citizen, she would have been obligated to testify at her deposition regardless of her employment just like any other citizen. In that capacity, she was performing "the kind of

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

activity engaged in by citizens who do not work for the government." Id. at 423 (distinguishing speech by public employees performing their job duties, to which "there is no relevant analogue to speech by citizens who are not government employees."); see also Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006) (holding that an employee's speech was protected because "her right to complain both to an elected public official and to an independent state agency is guaranteed to any citizen in a democratic society regardless of his status as a public employee."). Therefore, in this case, plaintiff was speaking as a citizen, not as a government employee, during her deposition in the Wender litigation. Defendants' motion to dismiss her First Amendment claim is denied.

**D. Wrongful Discharge in Violation of Public Policy.**

Washington recognizes a claim for wrongful discharge in violation of public policy for at-will employees. Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232 (1984). A plaintiff asserting the claim must prove the following three elements: (1) the existence of a clear mandate of public policy (the clarity element); (2) discouraging the conduct in which the employee engaged would jeopardize the public policy (the jeopardy element); (3) the public-policy-linked conduct caused the dismissal (the causation element). See Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941 (1996).

Defendants' motion focuses solely on whether plaintiff has proven the existence of a clear mandate of public policy to support her claim. Determining the existence of the clarity element is a matter of law. Dicomes v. State, 113 Wn.2d 612, 617 (1989). When the Washington Supreme Court first recognized the public policy exception to the at-will doctrine, it explained that courts applying the exception should proceed cautiously and determine whether the alleged public policy is manifested in the constitution, a statute, or a prior judicial decision:

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, *courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject*.

Thompson, 102 Wn.2d at 232 (internal citation and quotation omitted; emphasis in original); see also Dicomes, 113 Wn.2d at 618 ("In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. . . . [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.") (internal citation and quotation omitted). "Courts must 'find' not 'create' public policy, and the existence of such public policy must be 'clear.'" Selix v. Boeing Co., 82 Wn. App. 736, 741 (1996).

In *Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575 (2001), the Washington Court of Appeals held that there was no clear mandate of public policy protecting employees from being discharged for giving deposition testimony about workplace matters. Blinka argued that public policy protected her because she appeared for and gave truthful testimony during her deposition. Recognizing the potential breadth of such a policy, the *Blinka* court explicitly declined to recognize it. Instead, it noted the existence of a public policy prohibiting employers from discharging an employee for responding to a subpoena[4] or refusing to give false testimony, though it found that neither type of conduct was alleged in that case. Blinka, 109 Wn. App. 585 ("We agree with

---

[4] Similarly, a Washington court has explained that employees cannot be discharged for performing a public duty or obligation, "such as serving jury duty." Gardner, 128 Wn.2d at 936. Plaintiff does not argue that she was discharged for appearing at the deposition or because of the work time she missed as a result.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

1  Blinka that CR 45[5] and the laws against perjury provide the foundation for a public policy
2  prohibiting adverse employment action for responding to a subpoena or refusing to give
3  false testimony."). In finding a public policy for the two narrow issues identified, and
4  refusing to find the policy urged by Blinka, the court rejected the argument that public
5  policy protects employees for giving truthful deposition testimony. That holding, and the
6  fact that the Washington Supreme Court declined review, fatally undermine plaintiff's
7  public policy claim. Blinka v. Wash. State Bar Ass'n, 146 Wn.2d 1021 (2002) (declining
8  review).

9  Plaintiff does not attempt to bring her claim into one of the narrow exceptions
10 identified by the *Blinka* court; she does not argue that she was discharged for responding
11 to the subpoena or for refusing to give false testimony.[6] Instead, plaintiff argues that
12 public policy protects those who give truthful deposition testimony because otherwise the
13 conduct might go unredressed. In fact, plaintiff is pursuing redress through Section 1983,
14 and the criminal statutes she cites provide another avenue of redress. Plaintiff's assertion
15 is further undermined by the fact that the Washington Supreme Court has explained that
16 the availability of other means of redress is more aptly part of the jeopardy element. See

---

[5] The *Blinka* court noted that CR 45 contains "an implied obligation that the party in receipt of a properly issued subpoena comply with the order to appear." Blinka, 109 Wn. App. 585. The court went on to state, "Similarly, by criminalizing false statements made under oath, the state and federal perjury statutes operate as deterrents to false testimony, but they also inversely imply a witness's obligation to give truthful and forthright testimony." Id. at 585-586 (citing RCW 9A.72.020; 18 U.S.C. § 1621(1)).

[6] Karl previously alleged that Caw instructed her on how to "testify without testifying," but during her deposition, she denied that he did so. Karl Dep. at pp. 74-75. Instead, she testified that Caw told her that when asked about Chief Smith, to "tell the truth and don't offer up everything, just wait to be asked." Id. at p. 74. In light of that testimony, plaintiff does not contend that defendants violated public policy by instructing her to give false testimony.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

Korslund v. Dyncorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 181-82 (2005) (explaining that to establish the jeopardy element, plaintiff "must show that other means of promoting the public policy are inadequate."). Therefore, the existence of a public policy, a threshold issue, cannot be proven by the lack of other means of redress alone. Accordingly, in light of *Blinka*, the Court declines to find a public policy prohibiting employers from discharging employees based on the content of their deposition testimony.[7]

**E.     Conspiracy to Retaliate in Violation of Section 1985(2).**

Plaintiff contends that individual defendants Caw and Hugill conspired to transfer and terminate her employment in retaliation for her testimony in the Wender litigation and that she was injured as a result. Based on those allegations, she contends that defendants violated 42 U.S.C. § 1985(2), which prohibits conspiracies "to deter, by force, intimidation, or threat, any party or witness in any court of the United States . . . from testifying to any matter pending therein, freely, fully, and truthfully." Plaintiff relies on *Haddle v. Garrison*, 525 U.S. 121 (1998), in which the Supreme Court found that a plaintiff had standing to pursue a Section 1985(2) claim based on his allegation that he was discharged in retaliation for his participation in federal court proceedings. Although Haddle was a witness, the Court did not hold that witnesses have standing to pursue Section 1985(2) claims. The Court explicitly declined to address defendants' argument that "only litigants, and not witnesses, may bring § 1985(2) claims." Haddle, 525 U.S. at 125 n.3. Instead, the Court focused on a more narrow issue: whether plaintiff had

---

[7] Because the *Blinka* court considered, and explicitly rejected, the public policy urged by Karl, this Court declines plaintiff's invitation to certify the issue to the Washington Supreme Court.

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

asserted an injury in the loss of his employment even though he was an at will employee.

The Ninth Circuit has held, both prior to and after the *Haddle* decision, that witnesses lack standing to pursue Section 1985(2) claims. See, e.g., Blankenship v. McDonald, 176 F.3d 1192, 1196 (9th Cir. 1999) (upholding dismissal of plaintiff's retaliation claim and stating, "Because Blankenship was not a party to the EEO proceeding, she can show no injury under § 1985(2)."); David v. United States, 820 F.2d 1038, 1040 (9th Cir. 1987) (explaining that "allegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown that the litigant was hampered in being able to present an effective case."). Those cases clearly state that only adversely affected litigants, not witnesses, have standing to pursue a Section 1985(2) claim. Karl was a witness, not a litigant, in the Wender litigation. This Court is obligated to follow Ninth Circuit precedent. Based on that clear precedent, plaintiff lacks standing to pursue her Section 1985(2) claim.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART defendants' motion for partial summary judgment (Dkt. #38). The Court grants defendants' motion as to plaintiff's Section 1985(2) claim and her wrongful discharge in violation of public policy claim and dismisses those claims. The Court denies the motion as to plaintiff's First Amendment claim.

DATED this 11th day of January, 2011.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR PARTIAL SUMMARY JUDGMENT - 13