1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTHA KARL,

                    Plaintiff,

          v.

CITY OF MOUNTLAKE TERRACE, *et al.*,

                    Defendants.

Case No.  C09-1806RSL

ORDER GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendants' motion for partial summary judgment regarding several issues.  In response to the motion, plaintiff clarified that she is not asserting a state or federal law gender discrimination claim against the individual defendants.  Nor is she asserting a Section 1983 claim against the City based on any alleged policy, practice, or custom of retaliating against witnesses. Therefore, this order will focus on the remaining issue raised by defendants' motion: whether the individual defendants are entitled to summary judgment on plaintiff's Section 1983 claim against them, and if not, whether they are entitled to qualified immunity.

For the reasons set forth below, the Court grants in part and denies in part

ORDER REGARDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1

1   defendants' motion.[1]

2                              **II.  DISCUSSION**

3   **A.    Background Facts.**

4          Plaintiff began working for the City of Mountlake Terrace (the "City") in April

5   2003 as the Administrative Assistant to the Chief of Police.  In 2008, plaintiff was

6   subpoenaed to give deposition testimony in a civil case filed by former City employee

7   Sgt. Jonathan Wender.  Wender filed a federal lawsuit in this Court in 2007 against the

8   City, its Chief of Police, and others alleging that he had been discharged in violation of

9   the First Amendment and without due process.  Wender v. Snohomish County, C07-

10  0197TSZ (the "Wender litigation").  As part of that litigation, Karl was deposed in May

11  and again in July 2008.  Karl contends that her testimony was damaging to the City.

12         In August 2008, Chief Gregg Wilson became chief of the Mountlake Terrace

13  police department.  In September 2008, plaintiff contends that she was involuntarily

14  transferred to a part time "records specialist" position within the police department.  The

15  position involved computer data entry of reports, citations, and warrant information.  She

16  alleges that the transfer was in retaliation for her deposition testimony and discriminatory

17  because she was told that the transfer would enable her to spend more time with her two

18  young children.

19         On December 8, 2008, plaintiff's supervisor, defendant Charles "Pete" Caw, the

20  Assistant Chief in the Mountlake Terrace Police Department, initiated a meeting with

21  plaintiff regarding her performance.  He gave her a "Directed Training Plan" that gave

22

23  ───────────────

24         [1] Because this matter can be decided based on the written record, and because the
    Court heard oral argument on defendants' previous motion for partial summary judgment,

25  the parties' request for oral argument on this motion is denied.

26  ORDER REGARDING DEFENDANTS' MOTION
    FOR PARTIAL SUMMARY JUDGMENT - 2

1 her three weeks to improve or face termination.  Declaration of Joseph Schaeffer, (Dkt.

2 #72) ("Shaeffer Decl."), Exs. Q, 44.  Plaintiff contends that her performance improved

3 dramatically after that meeting.

4          In late December 2008, plaintiff and another employee, who the parties refer to as

5 "Employee A," had a disagreement in the records department.  Chief Wilson investigated

6 the incident and decided to place plaintiff, but not the other employee, on administrative

7 leave.  Wilson Dep. at p. 100.  His decision was based in part on the fact that defendant

8 Caw relayed to him that plaintiff was critical of the training program after the incident.

9 Id. at pp. 96-100.  After plaintiff was placed on leave, Chief Wilson reviewed her training

10 records, spoke with Caw and Assistant Chief Connor, and made a recommendation to

11 City Manager John Caulfield to terminate plaintiff's employment.  Id. at p. 101.  Before

12 making the decision to terminate plaintiff, he consulted with Caw about her lack of

13 progress in the training program.  Id. at pp. 101-02, 203.  During that conversation, Caw

14 stated that plaintiff was struggling in the position and that her progress up to that point

15 was not sufficient.  Id. at p. 105.

16          Caulfield decided to terminate plaintiff's employment during her probationary

17 period in the records specialist position based on Chief Wilson's recommendation.  Hugill

18 Dep. at p. 162.  Under state law, only Caulfield has the authority to hire and fire

19 employees, and only the City Counsel has personnel policy making authority.  Motion at

20 p. 10.  Plaintiff was discharged from her employment in January 2009.

21          Plaintiff filed suit in this Court in December 2009 alleging retaliation in violation

22 of her First Amendment rights, termination in violation of public policy, unlawful

23 retaliation against a witness in violation of 42 U.S.C. § 1985(2), and gender

24 discrimination in violation of the Washington Law Against Discrimination, ("WLAD"),

25

26 ORDER REGARDING DEFENDANTS' MOTION
   FOR PARTIAL SUMMARY JUDGMENT - 3

RCW 49.60 and Title VII, 42 U.S.C. § 2000e *et seq*.  In addition to suing the City, she has named as defendants Caw and Scott Hugill, the Administrative Services Director for the City.

By order dated January 11, 2011, the Court granted in part and denied in part defendants' motion for partial summary judgment.  The Court dismissed plaintiff's Section 1985(2) claim and her wrongful discharge in violation of public policy claim.

**B.   Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.   Analysis.**

1    As an initial matter, defendants contend that plaintiff's claims against Caw and

2 Hugill must be dismissed because prior to responding to the motion, plaintiff never

3 specified that she was suing them in their individual capacities.  Defendants argue that

4 plaintiff has failed to give them adequate notice that they were being sued in that

5 capacity, and plaintiff's response was filed just three months before trial.  However, as

6 defendants concede, the amended complaint did not rule out individual capacity

7 allegations.  Nor did defendants seek to clarify the capacity issue.  They have not shown

8 that they will suffer prejudice.  For all of those reasons, the Court will not dismiss the

9 allegations against Caw and Hugill in their individual capacities.

10    Defendants also argued in their reply memorandum that plaintiff cannot assert a

11 Section 1983 conspiracy claim.  The Court does not address that argument because

12 plaintiff did not plead that claim and it does not appear that she is pursuing such a claim.

13    **1.    First Amendment Retaliation.**

14    Having resolved the preliminary matters, the Court turns to the substance of

15 plaintiff's claim that Caw's and Hugill's actions led to her termination.  A plaintiff must

16 show, among other factors, that her speech was a "substantial or motivating factor for the

17 adverse action." Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 803 (9th Cir. 2009)

18 (internal citations and quotations omitted) (explaining that in addition to the "substantial

19 or motiving factor" standard, courts have also analyzed the issue under a mixed motive

20 approach; under either analysis, the focus is on causation).  The Ninth Circuit has

21 explained that Section 1983 liability can be established against those who participated in

22 the constitutional deprivation by "setting in motion a series of acts by others which the

23 actor knows or reasonably should know would cause others to inflict the constitutional

24 injury." Gilbrook v. City of Westminster, 177 F.3d 839, 854 (9th Cir. 1999).  The

25

26 ORDER REGARDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5

1  <u>Gilbrook</u> court explained that "a subordinate cannot use the nonretaliatory motive of a

2  superior as a shield against liability if that superior never would have considered a

3  dismissal but for the subordinate's retaliatory conduct." <u>Id.</u> at 855.  In contrast, a decision

4  maker's independent investigation and a "wholly independent decision" to take an

5  adverse employment action can negate a causal link between the subordinate's retaliatory

6  motive and the adverse employment action. <u>Lakeside-Scott</u>, 556 F.3d at 806.  The

7  inquiry turns on an "'intensely factual' determination of whether the superior never would

8  have made this decision 'but for the subordinate's retaliatory conduct.'" <u>Id.</u> at 805

9  (quoting <u>Gilbrook</u>, 177 F.3d at 854-55).

10     Although plaintiff admits that Caw and Hugill were not the decision makers, she

11  argues that they caused her constitutional injury by setting in motion a series of actions

12  that led to her termination.  As for defendant Caw, plaintiff has sufficiently shown, for

13  purposes of this motion and construing the facts in her favor, that Caw held retaliatory

14  animus against plaintiff based on her testimony in the Wender litigation.  Declaration of

15  Mike Mitchell,[2] (Dkt. #34) at ¶ 8 (stating he overheard Caw tell Hugill that plaintiff's

16  deposition testimony hurt the City and they would have to find a way to "get rid" of her).

17  Caw attended both of plaintiff's depositions, and a jury could interpret his subsequent

18  comments to her as expressing displeasure about the substance and forthcoming nature of

19  her testimony.  Under the same standard, plaintiff has sufficiently shown that Caw "set in

20  motion" her discipline and termination.  As part of the new Chief's orientation, Caw

21  related "deficiencies" in plaintiff's work.  Wilson Dep. p. 41.  Caw also encouraged her,

22

23

24     [2] Having cited to and quoted Mitchell's declaration in this order, the Court will
unseal the declaration unless the parties make a compelling showing, within five days of

25  the date of this order, why the declaration should remain under seal.

26  ORDER REGARDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6

through Assistant Chief Connor, to accept the records specialist position because she was an at-will employee and "could get fired" if she refused. Plaintiff's Dep. at pp. 252-53. Plaintiff contends that defendants sought her transfer, which resulted in Caw becoming her direct supervisor, so that Caw could be in a position to evaluate her performance and ultimately orchestra her termination. Plaintiff contends that even though the records specialist position had a steep learning curve and she had no prior experience in the position, Caw directed her to improve her performance or face termination after she had been in the position for less than three months, working only three days per week. Schaeffer Decl., Ex. 44. An experienced records specialist has submitted a declaration stating that new records employees typically train with another specialist for about six months, full time, and that it takes six to nine months of full time work to become fully proficient in the position. Declaration of Cindy Thomas, (Dkt. 73-2) at ¶¶ 6, 9.

Defendants also contend that one of plaintiff's peers initiated the review of plaintiff's performance as a records specialist by notifying Caw of performance problems. Declaration of Brenda Bannon, (Dkt. #62) ("Bannon Decl.") at pp. 277-79. However, unlike the decision in Lakeside-Scott, the termination decision in this case was not the result of an independent investigation conducted by Caulfield or at his direction. Caulfield Dep. at pp. 77-78. Although defendants argue that only Caulfield had the authority to make the final termination decision, that decision was based on Chief Wilson's recommendation. Id. at pp. 77, 79, 128-29. Construing the facts in the light most favorable to plaintiff, Caw both initiated the conversation with Chief Wilson about plaintiff's performance and provided the substantive information to him. Chief Wilson recommended plaintiff's termination to Caulfield because of the incident involving Employee A and based on his "review of her training records and progress or lack thereof

ORDER REGARDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7

through the training program." Wilson Dep. at pp. 144-45. Chief Wilson's

recommendation was based in part on Caw's statement that plaintiff was critical of the

training program after the incident with Employee A, and Caw's assessment that plaintiff

had not made progress in the training program, was struggling in the program, and that

her progress up to that point was not sufficient. Wilson Dep. at pp. 96-103, 105. It was

also based on documents Caw forwarded to him, including notes of a conversation Caw

had with plaintiff about her performance as a records specialist. Id. at pp. 78-81;

Schaeffer Decl., Exs. 42, 91. That evidence, coupled with the evidence that plaintiff was

treated differently than other employees and improving in her training, is sufficient to

defeat this motion as to defendant Caw.

        As for defendant Hugill, plaintiff has not presented any evidence that he had

retaliatory animus against her. In the alleged conversation during which Caw suggested

getting rid of her, there is no evidence that Hugill agreed. Nor did Hugill ever read

plaintiff's Wender deposition testimony. Hugill Dep. at pp. 180-81. In the absence of an

evidence of retaliatory animus, plaintiff's First Amendment retaliation claim against

Hugill fails as a matter of law. Even if Hugill had retaliatory animus, plaintiff has not

shown that she would not have been discharged but for that animus. Lakeside-Scott, 556

F.3d at805. Hugill never recommended her termination. Hugill Dep. at p. 162. Chief

Wilson's summary of his reasons for recommending plaintiff's discharge do not include

any recommendation from Hugill or information provided by him. Although plaintiff

alleges that Hugill wrongfully informed Chief Wilson that plaintiff was interested in

working for another City department and was interested in working part time to spend

more time with her family, that information was both true and job related. Plaintiff Dep.

at pp. 39, 59, 206, 222, 224-25, 231; Kurrie Dep. at p. 38. There is no evidence that

ORDER REGARDING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8

Hugill provided the information maliciously or to encourage any adverse action against plaintiff.  Plaintiff also notes that Hugill calculated, among other things, the difference between what she was earning in her current job and the records specialist position, but plaintiff had requested more information to make the decision about whether to accept the transfer to the records position.  Plaintiff's Dep. at pp. 222-24.  Plaintiff also argues that Hugill drafted the two termination letters she received, but that ministerial function is not evidence of retaliatory animus or of participation in the termination decision.  Instead, plaintiff repeatedly argues that the information used to support the termination was gathered and/or created by Caw.  Accordingly, Hugill is entitled to summary judgment on plaintiff's Section 1983 claim.

   **2.     Qualified Immunity.**

   Defendant Caw argues that even if plaintiff has sufficiently alleged a constitutional violation against him, he is entitled to qualified immunity.  Qualified immunity protects Section 1983 defendants as long as their conduct did not violate a clearly established constitutional or statutory right of which a reasonable person would have known.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223 (2009).  Defendants argue that in December 2008, it was not clearly established that an employer could not discharge an employee for his or her subpoenaed deposition testimony during private litigation.  This Court has already held that plaintiff was speaking on a matter of public concern.  Therefore, the Court must determine whether, at that time, a reasonable manager in Caw's position would have understood that his actions violated plaintiff's First Amendment right to free speech.  See, e.g., Clairmont v. Sound Mental Health, 632 F.3d 1091 (9th Cir. 2011); Hope v. Pelzer, 536 U.S. 730, 741 (2002) (explaining that the "salient question" in qualified immunity analysis is whether the state of the law at the

1   time gave defendants "fair warning" that their conduct was unconstitutional).  Plaintiff

2   bears the burden of showing that the right was clearly established.  Clairmont, 632 F.3d at

3   *34.

4           In Clairmont, the Ninth Circuit held that by 2007, "there were cases that would

5   have alerted a reasonable person in [defendant's] position that it would be unlawful to

6   retaliate against an employee for having testified in a criminal proceeding pursuant to a

7   subpoena."  Clairmont, 632 F.3d at *35.  The Ninth Circuit has also held that by 2005, it

8   was clearly established that a public employee witness had a First Amendment right to

9   testify in a class action discrimination lawsuit without retaliation.  Robinson v. York, 566

10  F.3d 817, 826 (9th Cir. 2009).  Although the Ninth Circuit had not yet addressed whether

11  subpoenaed deposition testimony was protected, the Seventh Circuit had held that a

12  police officer's speech during a civil suit deposition was protected.  See Morales v. Jones,

13  494 F.3d 590, 598 (7th Cir. 2007).  In contrast, defendants rely on Morris v. Crow, 142

14  F.3d 1379 (11th Cir. 1998), in which the court held that a police officer's testimony in a

15  civil suit deposition was not protected.  The Morris holding, however, was not based on

16  the fact that the speech occurred in the context of a deposition.  Rather, it was based on

17  the fact that the officer's speech – drafting an accident report and testifying about the

18  same – were part of his job duties and therefore not protected speech.  Morris, 142 F.3d at

19  1382.  For that reason, the case does not, as defendants allege, stand for the proposition

20  that deposition testimony is unprotected.  Nor does Morris support defendants' assertion

21  that a circuit split existed in 2008.

22          Even if a circuit split had existed, this circuit had opined on the relevant issue in

23  Robinson.  Defendants argue that this case is materially different from Robinson, which

24  involved discrimination and testimony in court.  "Although earlier cases involving

25

26  ORDER REGARDING DEFENDANTS' MOTION
    FOR PARTIAL SUMMARY JUDGMENT - 10

1    'fundamentally similar' facts can provide especially strong support for a conclusion that

2    the law is clearly established, they are not necessary to such a finding."  Hope, 536 U.S.

3    at 741.  The Robinson court explained that "closely analogous preexisting case law is *not*

4    required to show that a right was clearly established."  566 F.3d at 826 (internal citation

5    and quotation omitted; emphasis in Robinson).  "While there must be some parallel or

6    comparable factual pattern, the facts of already decided cases do not have to match

7    precisely the facts with which the government employer is presented."  Fogel v. Collins,

8    531 F.3d 824, 833 (9th Cir. 2008) (internal citation and quotation omitted).  The

9    Robinson decision is sufficiently analogous to the facts in this case that Caw should have

10   known in 2008 that it was unlawful to retaliate against plaintiff for her deposition

11   testimony.  There is no material distinction between testimony about discrimination and

12   testimony about constitutional rights.  No reasonable argument can be made that rights

13   created by statute are more deserving of protection than those created by the constitution.

14   Nor have courts in this context drawn a distinction between testimony in court and

15   testimony in a compelled deposition.  Both types of speech occur pursuant to a subpoena,

16   issued under the auspices of a court, in the context of on-going legal proceedings.

17   Moreover, other sources of law, including anti-retaliation statutes, the federal and state

18   laws against perjury, and CR 45 all support a conclusion that Caw should have known it

19   was unlawful to retaliate against plaintiff for her compelled deposition testimony.

20   Accordingly, the Court denies his request for summary judgment on the qualified

21   immunity defense.

22          **3.    Gender Discrimination Claim Based on Transfer.**

23          In their reply in support of their motion, defendants requested the opportunity to

24   submit further briefing on plaintiff's gender discrimination claims under state and federal

25

26   ORDER REGARDING DEFENDANTS' MOTION
     FOR PARTIAL SUMMARY JUDGMENT - 11

law regarding the transfer decision.  Defendants argue that the claim is untenable because plaintiff cannot prove that the position was filled by someone outside the protected class for two reasons.  First, defendants have defined plaintiff's protected class as women with children.  However, there is no reason to define the protected class so narrowly.  An adverse employment action based on an assumption that a woman with small children wants to work fewer hours is cognizable as a gender discrimination claim.  See, e.g., Gerving v. Opbiz, LLC, 2009 U.S. App. LEXIS 9156 at *3 (9th Cir. 2009) (finding that plaintiff had presented a prima facie case of sex discrimination by noting that her supervisor, among other things, commented that mothers should stay at home).  Second, the fact that the position was not filled by someone outside the protected class is not dispositive because the position remained vacant and the transfer was an adverse action.  See generally Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).  For those reasons, the Court does not request further briefing on the gender discrimination claims but leaves them for the jury to decide.

## III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART defendants' motion for partial summary judgment (Dkt. #61).  The Court grants summary judgment in favor of defendant Hugill regarding plaintiff's First Amendment retaliation claim against him, and denies the remainder of defendants' motion.  During trial, plaintiff may pursue her state and federal law discrimination claims against the City

1    and her Section 1983 claim against Caw.

2
        DATED this 15th day of April, 2011.
3

4

5                                    _MMr S Casnik_
                                     Robert S. Lasnik
6                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER REGARDING DEFENDANTS' MOTION
     FOR PARTIAL SUMMARY JUDGMENT - 13